## WILLIAM W. PEYTON *v.* NEWTON RICHARDS.

Action for the value of a slave killed by the unskilfulness and fault of persons who were in the employment of defendant. The evidence showed that the defendant had contracted with the undertaker to put up the iron front on a building, and that afterwards defendant made a special contract with T. for T. to do the same work, with assistants and laborers employed and paid exclusively by T. The work fell to the ground and killed the slave. *Held :* That T. was not the servant or overseer of defendant, and consequently defendant was not liable.
C. C. 2299, 2739.

APPEAL from the Second District Court of New Orleans. *Lea*, J.
    *J. R. & J. D. Jones*, for plaintiff and appellant. *Durant & Hornor*, for defendant.

BUCHANAN, J. The plaintiff's slave, while walking along the sidewalk of Camp street, in front of a building which was in process of erection, was killed by the falling of cast iron columns and entablatures, which formed the front of said building. Plaintiff claims the value of said slave from defendant, on the

allegation that the accident was caused by the unskilfulness and fault of persons who were in the employment of defendant, and who were at the time in the exercise of the functions in which they were employed by defendant.

The action is based upon the 2299th Article of the Civil Code, and, as the defendant has denied his liability, we are first to inquire whether the workmen who put up the iron front were persons for whom the defendant was legally responsible in damages, at the suit of those who might have been injured by their fault, unskilfulness or negligence in the performance of that work.

The evidence shows that the building belonged to *Dr. Farrell*, and that *John McVittie* was the undertaker of the building. *McVittie* made a special contract with defendant, *Newton Richards*, to put up the iron front in question, of which *McVittie* furnished the materials; and *Richards* made another special contract with *William Thompson* to do the same work. *William Thompson* himself performed the work, with the assistance of laborers, hired and paid by himself. Just as the work was completed, the iron columns and plates, or entablatures, fell to the ground, in consequence, as the witnesses think, of not being sufficiently propped with pieces of wood under the horizontal pieces, as is usual and necessary. *Thompson* himself and another workman fell to the ground with the work. After this accident, which caused the death of plaintiff's slave, *Thompson* erected the work anew, and only received the stipulated compensation from defendant, $15, after the work was properly done and finished. We are of opinion that *Thompson*, by whose fault, negligence or unskilfulness this accident happened, was not the "servant or overseer" of defendant, in the performance of this work. He engaged to do a certain job for defendant, for which defendant engaged to pay him when completed. But in doing the job, the defendant had no control or superintendence over *Thompson*. The laborers who assisted *Thompson* had no right to look to *Richards* for their payment, except, under a particular statute and upon the observance of certain formalities, to the extent that *Richards* might become indebted to *Thompson* for the work; and no indebtedness could arise on the part of *Richards* towards *Thompson* except upon the delivery of the work completed.

In all the cases of damages awarded under the 2299th Article of the Code, the party who caused the damage was one, under wages to the party defendant, and engaged in work of which the actual superintendence and control belonged to the defendant. 18th L. R., 492; 1 Rob., 178; 2 An., 654; 5 An., 704; 7 An., 321.

In the case of *Camp* v. *Kirwan and the Wardens of the Church of St. Louis*, where the proprietors of the building, as well as the contractor who executed the work, were held liable *in solido* for damage caused by an accident similar in its character to this one, there existed the peculiar feature, that the proprietor had reserved to himself, by contract, the controling superintendence of the execution of the work, through an architect employed by himself. Judge SLIDELL, delivering the opinion which was the basis of the decree in that case, uses the following language: "It seems to me that whatever responsibility there may be for such accident is thrown upon the undertaker, by the Article 2739 of our Civil Code. But the church wardens took their case out of the ordinary category, by retaining a continuous and active direction and control over the construction of the work. By reason of the exercise of this direction and control, they, in my opinion, are answerable to *Camp* for the consequences of the defectiveness of the work." 7 An., 326.

Judgment affirmed, with costs.