## No. 12,641.

FRANK G. MAHAN VS. JOHN AND PETER EVERETT AND PLANTERS' MOLASSES COMPANY, LTD.

Pedestrians are entitled to the right of way on the sidewalks of the city, and to the assurance that they may traverse the same in the confidence of safety.

Ordinary care is to be observed by those using the banquette to avoid danger, but not the same alertness is required of them as is the case when they cross streets where vehicles, cars, etc., have equal rights of way.

While it is permitted to load and unload drays, floats, and other vehicles over the banquettes, the same must be done with due care and precaution for the safety and protection of passers-by, those engaged in the work remembering always that they are temporarily obstructing a thoroughfare over which the general public afoot has the prior servitude or right of passage.

APPEAL from the Civil District Court, Parish of Orleans. *Ellis J.*

---

*Lazarus, Moore & Luce* and *Joseph N. Wolfson* for Plaintiff, Appellant.

*Bernard McCloskey* for J. and P. Everett, Defendants, Appellees; *D. B. H. Chaffe* for Planters' Molasses Company, Ltd., Defendant, Appellee.

Argued and submitted May 5, 1898.
Opinion handed down June 13, 1898.
Rehearing refused June 28, 1898.

The opinion of the court was delivered by

BLANCHARD, J. This is an action sounding in damages for personal injuries alleged to have been sustained. The amount claimed is five thousand dollars.

The averments are that plaintiff was walking along a public street in the city of New Orleans, where he had a right to be; that he was prudent and careful; and that in passing certain premises occupied by the Planters' Molasses Company, Limited, without notice or warning, a barrel of molasses was violently rolled on skids from a vehicle standing near the curbstone in the street, which barrel struck petitioner, beaking his leg and causing him great bodily pain and serious injury, rendering him less able to earn a living for himself and family and making him a cripple for life.

The Molasses Company and the owners of the vehicle are sued *in solido*, on the allegation that the injury to plaintiff was occasioned through their fault, and that of their employees, in failing to exercise due care and diligence to insure the safety of pedestrians along the street from the danger incident to the unloading of barrels of molasses, in the manner mentioned, from drays into the warehouse. It is set forth that the Molasses Company employed John and Peter Everett, who own and operate public drays and floats, to haul the molasses in barrels to their warehouse and they were so engaged at the time of the accident; and it is averred that, besides this contractual relationship, the Molasses Company and the Everetts jointly owned, controlled and managed the drays and floats so engaged in hauling the molasses.

Defendants plead the general issue, and represent that if any damage resulted to plaintiff it was brought about by his own negligence.

It was not a jury trial, and the judgment of the court below was for defendants, from which this appeal is prosecuted.

. Plaintiff was an old man, between sixty-nine and seventy years of age. His sight apparently was not good, or he was suffering in some way from his eyes, for the evidence discloses that he was wearing green spectacles, with side glasses. Just why he wore these glasses is not told. He was on the street, engaged in his usual avocation— trading on a small scale, buying small quantities of commodities to sell again without delay at a small profit, a kind of peddling business. Sometimes, he says, he would sell a carload of some stuff or other on commission. He had just bought a box of peaches and was carrying it under his arm intending to sell it. He had been well-to-do in days gone by, but was not at the time of the accident in good circumstances.

He had a right to be on the streets and it was not negligence, or want of prudence, or care, on his part to be there even though he found it necessary to protect his eyes with green glasses. There is no pretence that he could not see, or see well enough to justify his being out alone. He testified his hearing was good and that he could see.

Pedestrians are entitled to the right of way on the side-walks or banquettes of the city. That is what the side-walks are dedicated, constructed and maintained for. Ordinary care is to observed by those using the same to avoid danger, but not the same alertness is required of them as is the case when they cross streets where vehicles, street cars, etc., have equal rights of way.

While it is permitted to load and unload drays, floats and other vehicles over the banquettes, such loading and unloading must be done with care and precaution, having due regard for the safety and protection of passers-by, those engaged in the work remembering always that they are temporarily obstructing, more or less, a thoroughfare over which the general public afoot has the prior servitude or right of passage. It follows, as tersely stated by plaintiff's counsel, that the loading and unloading into and from vehicles over the side-walks must be done in such way that the physically weak as well as the physically strong, the tenderly young as well as the maturely old, men and women, whether young and vigorous, or old and feeble, may traverse the same in the confidence of safety.

Anything short of this constitutes negligence in those engaged in such loading and unloading, and where injury results to a passer-by

a conclusive, certainly a clear, case of contributory negligence on his part must be made out to free the former from liabllity.

No such conclusion or clear case of contributory negligence on part of plaintiff is made out by the defence herein. We are not able to agree with the conclusions of our learned brother of the lower court in this regard. A careful consideration of the testimony leads to a different result than that announced by him.

The float or wagon from which the barrels of molasses were being discharged into the store of the Planters Molasses Company, Limited, was standing close to the curbstone of the side-walk and a skid was used down which the barrels were rolled. One end of the skid was on the wagon, the other end on the side-walk. The length of the skid was eight or ten feet and the end of it which rested on the side-walk was from two and a half to three feet from the door of the store through which the barrels were to pass into the building. The heighth from the side-walk to the top of the wagon where the skid was placed was about a foot and a half. The skid placed thus formed an incline. One man only was in the wagon. He manipulated the barrels to the point where the skid rested on the float, adjusted them on the skid, then loosened his hold and the barrels rolled down. The weight of the barrels was six hundred and fifty pounds. There can be no doubt that the momentum gained by the heavy barrels in going down this incline was considerable. A sack or bag folded was placed at the inner end of the skid to break the fall or force of the barrel as it reached the paved side-walk. One of defendants, on the stand, admitted the barrels would or may run four or five feet after reaching the lower end of the skid. This would carry them clear into the store, for the door of that building was less than three feet from the end of the skid. For a barrel to roll from the top of the skid to the sidewalk required, we are satisfied, but an instant. The man in the wagon who poised a barrel on the skid at its upper end and then sent it on its downward course was guilty of gross negligence in loosening his hold on it at the instant that a pedestrian was stepping opposite the lower end of the skid. That is exactly what the driver of this float did, and the barrel which he thus loosened ran down upon the plaintiff just as the latter was entering the narrow passage way left on the side-walk between the end of the skid and the door of the building. It was the duty of this driver as he poised the barrel preparatory to its downward flight

to glance at the condition of things at the lower end of the skid and if he saw a passer-by about to enter the space between the skid and the door to hold the barrel until he had passed the danger line, or else call out to him to stand until the barrel had passed down and out of the way. He did neither of these things. He either did not glance down to see if the way was clear, or else he carelessly, with almost criminal negligence, loosened the barrel notwithstanding the dangerous proximity of plaintiff to the lower end of the skid. The plaintiff could not have been over a step away from the narrow passage left on the sidewalk and still in motion toward it when the barrel that injured him left the top of the skid. It was much more the duty and care of the driver of the wagon to take notice of plaintiff nearing the lower end of the skid and regulate his action accordingly, than it was plaintiff's duty and care to notice the driver in the wagon and regulate his movement or conduct by what the driver was doing. The plaintiff was on the public thoroughfare for foot passengers and had a right to the occupancy for the moment of that particular part of the side-walk superior to that of the barrel of molasses. He had a right to expect, even if he noticed the barrel poised on the skid at the wagon end of it, that the driver would recognize his superior right of way and of passage and hold the barrel until he had exercised it. It will not do to say that the plaintiff, seeing the skid and noticing the driver and the barrels, must stop and make inquiry as to the intentions of the driver with respect to sending the barrel down at that particular instant of time. The obligation rested decidedly on the driver to give warning to plaintiff, or else hold the barrel in his grasp an instant longer.

The plaintiff testified he did not see the barrel until it struck him, that no warning was given him, no hand was put upon him or signal made to him to stop. He says he wss noticing in front of him as he walked along and was exercising the ordinary care of a pedestrian. A witness for the plaintiff, who saw the accident, says he had just passed the end of the skid himself; no one was there preventing people from passing, nor stopping the barrels or impeding their force as they came down the skid; nor was any warning or notice given. He testified, too, that the colored man on the float shoved the barrel on the skid without regard to consequences.

A witness for the defence, employed by the defendant company, denies the driver shoved the barrel, and asserts that the barrel had

left the hands of the driver at the time plaintiff attempted to pass. It is immaterial whether the barrel rolled down of its own momentum or its speed was accelerated by a shove at the upper end of the skid. Nor, in our view, is it of consequence that the barrel had been started on its flight downward as plaintiff essayed to pass. It should, we hold, have been held by the driver at the upper end of the skid until the possibility of danger to plaintiff had passed, until the latter had been called to stop and had stopped, or had moved on beyond the danger point.

Another witness for the defence, also an employee of defendant company, says he put his hand on plaintiff to stop him as the barrel was coming down, and that plaintiff would not have been hurt had he stopped when he did this. He admits, however, that when he touched him the barrel was half way down the skid and plaintiff was right at the end of the skid, and it was too late to hold him out of harm's way. As opposed to this plaintiff testifies that no one put his hand on him or tried to stop him, and John Everett, one of the defendants, who was present and in a few feet of the place where the accident occurred, stated on the stand that he knew of no effort made to stop plaintiff, and that he gave plaintiff no warning.

There was conflict of testimony as to the velocity with which the barrel moved down the incline. However this may be, results speak for themselves. It was moving with force enough to break plaintiff's leg. To have done this its velocity must have been great enough to come down the skid in an instant of time—too swift to enable plaintiff to escape it when turned loose above just as he was stepping in front of the skid below. If the force of the barrel was sufficiently great to break plaintiff's leg, it is improbable that he could have stopped it had he made an effort to do so as it approached him. On this point the witness Connors, sworn for the defence, says: " Just as the barrel left the driver's hands I turned, and Mr. Mahan had thrown down his hands as if to prevent the barrel from hitting him." Yet it did strike him and with force enough to break his leg.

We find the case to be with the plaintiff and the judgment appealed from must be reversed.

John and Peter Everett alone are responsible, however. There is no case against the other defendant, the Planters' Molasses Company, Limited.

The driver of the float whose negligence caused the accident was in the employment solely of the Everetts. He had no connection with the Molasses Company, and that corporation are not liable for his fault. While the molasses belonged to the company and was being hauled to their store, the hauling was done under contract with the Everetts, who, as boss draymen, were independent contractors. A contractor is not liable for the negligent or improper execution of the work by the contractor. Woods on Master and Servant, p. 593; Farren, Tutor, vs. Sellers & Co., 39 La. An. 1011.

As to the *quantum* of damages, we think one thousand dollars sufficient compensation for the injuries sustained by plaintiff.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from, in so far as the Planters' Molasses Company, Limited, is concerned, be affirmed; but in so far as John and Peter Everett are concerned, that said judgment be annulled, avoided and reversed, and it is now ordered and decreed that plaintiff do have and recover of said John and Peter Everett, *in solido*, the sum of one thousand dollars with legal interest from this date, together with costs of both courts, except those incurred in making the Molasses Company, Limited, a party defendant, which must be borne by the plaintiff.