No. 8852.
Orleans Appeal.

THE. E. C. TAYLOR CO. v. N. Y. AND CUBA MAIL SS. CO., Appellants.

(March 2, 1925, Opinion and Decree.)
(March 30, 1925, Rehearing Refused.)
(April 27, 1925, Decree Supreme Court. Writ of Certiorari and Review granted.)
(July 29, 1925, Decree Supreme Court. 105 Sou., Adv. Rep. No. 4, p. 379.)

*(Syllabus by the Court.)*

1. Louisiana Digest—Master and Servant— Par. 1, 176, 177.

When a person lets out work to another to be done by him, such person to furnish the labor and the contractee reserving no control over the work or workmen, the relation of contractor and contractee exists, and not that of master and servant, and the contractee is not liable for the negligent or improper execution of the work by the contractor.

Appeal from Civil District Court, Hon. Wynne H. Rogers, Judge.

This is a suit for damages to a barge and laying up of a towboat.

Judgment for plaintiff. Defendant appealed.

Judgment reversed.

Borah, Himel, Block & Borah, attorneys for plaintiff and appellee.

Terriberry, Rice & Young, attorneys for defendant and appellant.

CLAIBORNE, J. The plaintiff, the Taylor Co., engaged in the towing business, made a contract with the Equipment Co. by which the Taylor Company was to tow from Indian Village, on Bayou Plaquemines, and unload, at its own expense, upon the wharves of New Orleans, 500 tons of steel rail.

When the shipment arrived at New Orleans there was no wharfroom found upon which to unload the rails. There was then lying along the wharf below New Orleans at Chalmette Slips the Steamship "Lake Inglenook" upon which the rails were to be eventually loaded for export.

The ship was represented by Dudley Thomas, agent of the defendant doing business in this State in the name of "Ward Line".

It was then agreed between all three parties, the Taylor Company, the Equipment Company, and Mr. Thomas, that instead of unloading the rails upon the wharf at New Orleans at its expense, as it had agreed to do, the Taylor Company should tow the rails down to the Chalmette Slips alongside the "Lake Inglenook" and that the defendant Company should unload the rails at its own expense. In other words, instead of unloading and delivering the rails upon the wharves at New Orleans, the plaintiff, the Taylor Company, was to deliver the rails at the ship's side.

The rails were contained in a barge and the barge was towed by a tug, both the property of the plaintiff.

In pursuance of said agreement the plaintiff towed the barge alongside of the ship.

The defendants then employed the G. Raymond Stevedoring Co. to unload the rails and put them aboard the ship "Lake Inglenook". In unloading the rails, through the carelessness and negligence of the men in charge of the work, who, the plaintiff alleges were the employees of the defendant, some of the rails slipped through the sling of the derrick and pierced a hole through the barge from which they were being hoisted, the property of the plaintiff, the Taylor Company. This accident necessitated the docking of the barge for repairs for some eight days, and the laying up of the tow boat Alarm.

The repairs cost $740, which the defendant paid, and the plaintiffs are now claiming damages from the defendants in the sum of $1,784.25, composed as follows:

The laying up of the tow boat_____$1,044.25
Loss of use of barge_____ 240.00
Loss of fuel oil in bottom of barge__ 800.00

$1,784.25

Among other defenses defendants alleged:

"Further answering defendant shows that the work of unloading the steel rails from Barge No. 30 on the steamship 'Lake Inglenook' was performed by the G. Raymond Stevedoring Company, an independent contractor.

"Neither defendant nor any of its agents or employees had anything to do with the unloading of said rails on the Steamship 'Lake Inglenook', and if there was any fault or negligence on the part of those in charge of unloading said rails (and defendant is without sufficient information to enable it to say whether or not there was any fault or negligence) it was a matter with which defendant had nothing to do and over which it had no control, as said work had, as before stated, been let out to an independent contractor over whom defendant had no control and for whose actions it was not responsible."

There was judgment for plaintiff and defendant has appealed.

We do not think it necessary to deal with any defense other than the one above stated; for if the facts stated therein are established then the defendants are entitled to a judgment.

The plaintiff alleged that the "damage to said barge was negligence of the agents and employees of the New York and Cuba Mail Steamship Company in charge of the unloading of said rails".

The defendant's liability must be determined by the solution of the question whether the rails were being unloaded by the employees of the defendant or by an independent contractor. If by the former, the defendants are liable; if by the latter, they are not. The question must be decided by the evidence.

Defendants' agent, Dudley Thomas, testifies:

"Q. Who actually unloaded the rails from the barge to the 'Lake Inglenook'?
A. G. Raymond Stevedoring Company, contractor, and we arranged with them to do that.
Q. Who paid them to do that?
A. We did, for account of the steamer.

Q. Under what conditions did you employ the Stevedores to unload these rails?
A. At the time that barge was handled we were employing them on a cost plus basis.
Q. Did the Stevedores make a report to you as to having damaged the barge?
A. Yes, sir. About 5:30 or 6 o'clock at night they called me on the phone and said one of the rails went adrift and punctured the barge and that it was sinking, and I gave instructions to double up the gang and get all the rails off as quick as possible, work through the supper hour, which they did.
Q. The people were employed by you regularly to load all your boats, were they not?
A. Yes, sir.
Q. And were your agents for that purpose?
A. Yes, sir.
Q. Now what did you mean by that answer; yes, sir?
A. We had the contract with them, and they were in entire charge of loading and unloading the ship.
Q. You are referring to the G. Raymond Stevedoring Co.?
A. Yes, sir.
Q. Now you say, in explanation of your testimony that the Stevedores were your agents, that you had them employed to do all your loading. Were they not responsible to you for any damage they did to your boat?
A. We held them responsible for any damage they would do, yes, sir.
Q. You paid the repair bill for repairing the barge, $740.00?
A. We paid a bill to the Johnson Iron Works on instructions from the P. and I. Club; that is the American Ship Owners' Protective Association. They instructed us to pay the bill to Johnson.
Q. They instructed you to pay it because you were in charge of the 'Inglenook' and had the work done?
A. They instructed us to pay it because Johnson had done the work and was entitled to his money. Who was to reimburse the Club, I don't know; but we were instructed to pay it and charge it to the shipping board in the account.
Q. Is it not a fact that when you took this barge to the Johnson Iron Works to be repaired you told them the Ward Line would pay that bill?
A. No, sir.

Q. Didn't you tell them you would see that they got their money?

A. No, sir, I don't remember telling them that."

Captain Robert E. Hart, Master and Pilot of the tow boat Alarm, witness for the defendant, testifies:

"Q. Who was unloading the rails at the time of the accident which you report occurred?

A. It was being done by a Stevedore. I don't know his name.

Q. What caused the accident?

A. The accident was caused by using a hook chain sling, as near as I can see, because there had been several bunches of rails slipping before.

Q. Was the method of handling the rails and unloading them, was it correct or careless?

A. Well, it looked careless to me."

Mr. Taylor, President and General Manager of plaintiff company testifies:

"Q. Did you have anything to do with the Stevedores who unloaded these rails, as stated?

A. No, sir.

Q. Never talked to them or made any contract with them, or discussed the matter with them?

A. No, sir."

That is all the testimony upon that branch of the case.

We think it establishes that the work of unloading the rails from the barge was being done by the Stevedoring Company as an independent contractor, and not by the servants or agents of the defendants. Nor does it matter that the Stevedore was being paid by cost plus basis.

In the case of Faren vs. Sallers, 39 La. Ann. 1011, 3 South. 363, the Supreme Court adopted the opinion of Wood on Master and Servant, quoting:

"Sec. 593 (312). When a person lets out work to another to be done by him, such person to furnish the labor and the contractee reserving no control over the work or workmen, the relation of contractor and contractee exists, and not that of master and servant, and the contractee is not liable for the negligent or improper execution of the work by the contractor.

"Sec. 614 (317). The simple test is who has the general control over the work? who has the right to direct what shall be done and how to do it? and if the person employed reserves this power to himself, his relation to his employer is independent and he is a contractor; but if it is reserved to the employer or his agents, the relation is that of master and servant."

Thompson says the test is the right to discharge. Vol. 2, p. 892.

In the case of Gallagher vs. S. W. Exposition Assn., 28 La. Ann. 943, the Court said:

"Where a party lets a job of work to a competent and suitable contractor and does not retain or exercise any control or supervision over the work, he cannot be held liable to any employee of such contractor for any injury suffered by the employee while engaged in said work, on account of the fault of the contractor."

In Peyton vs. Richards, 11 La. Ann. 62, the Court said:

"The evidence showed that the defendant had contracted with the undertaker to put up the iron front on a building, and that afterwards defendant made a special contract with T. for T. to do the same work with assistants and laborers employed and paid exclusively by T. & T.

"The work fell to the ground and killed the slave. Held, that T. was not the servant or overseer of defendant and consequently defendant was not liable." In the body of the opinion the Court said: "In all the cases of damages awarded under the 2299th Article of the Code, the party who caused the damage was one under wages to the party defendant, and engaged in work of which the actual superintendence and control belonged to the defendant." Gaillardet vs. Demaries, 18 La. 492; Hart vs. New Orleans & C. R. Co., 1 Rob. 178; Taylor vs. Mexican Gulf Ry. Co., 2 La. Ann. 654; Carmanty vs. Mexican Gulf Ry. Co., 5 La. Ann. 704; Camp vs. Church Wardens of Church of St. Louis, 7 La. Ann. 321.

In Riley vs. State Line S. S. Co., 29 La. Ann. 791, the Court held that a ship was not

liable to an employee of a stevedore caused by defective tackle, even if such tackle was furnished by the ship, when it is shown that the tackle had no apparent defect.

This decision was affirmed in Sweeny vs. Murphy, 32 La. Ann. 628, although the workmen employed by the Stevedore were the sailors of the ship.

In Young vs. Ship Princess, 22 La. Ann. 389, it was held that an action for damages for a collision could not lie against a vessel at the time under the control of a tugboat.

In Davie vs. Levy, 39 La. Ann. 553, 2 South. 395, the owner was exonerated from liability for an obstruction placed across the street by one with whom he had contracted to bring coal into his yard.

In Mahan vs. Everett and Planters Molasses Co., 50 La. Ann. 1162, 23 South. 883, plaintiff was walking along the sidewalk where Everett's employee was loading barrels for the Planters Molasses Co.; one of the barrels rolled against plaintiff and injured him. Held: Everett was an independent contractor for whose fault the Planters Molasses Co. was not liable. Held:

"The driver of the float whose negligence caused the accident was in the employment solely of the Everetts. He had no connection with the Molasses Company, and that corporation is not liable for his fault.

"While the molasses belonged to the Company and was being hauled to their store, the hauling was done under contract with the Everetts, who as boss draymen, were independent contractors. A contractor (contractee) is not liable for the negligent or improper execution of the work by the contractor; quoting Faren vs. Sallers, 39 La. Ann. 1011; 3 South. 363." Thompson on Neg., p. 899, 26 Cyc. 1555, No. 9013 Ct. App.; Peyton vs. Richards, 11 La. Ann. 62; Sweeny vs. Murphy, 32 La. Ann. 628; Moffet vs. Koch, 106 La. 375, 31 South. 40; Clark vs. Tall Timber Lumber Co., 140 La 380, 73 South. 239; Ecuyer vs. Benevolent Assn. of Elks, 152 La. 73, 92 South. 739; Wood, Master and S., Sec. 312, p. 601.

The defendants, through their agent, Dudley Thomas, testify that they had a contract with the G. Raymond Stevedoring Company, and that "they were in entire charge of loading and unloading the ship". There is no testimony to contradict this witness. The judgment must therefore be in favor of defendants.

It is therefore ordered that the judgment appealed from be reversed and set aside and it is now ordered that there be judgment in favor of defendants rejecting plaintiff's demand at its cost.