This is an action sounding in damages for personal injuries alleged to have been sustained. The amount claimed is $3,035. The averments are that, on July 5, 1939, at about 9 o'clock p.m., plaintiff, 70 years of age, was walking along the sidewalk of State Street in the direction of St. Charles Avenue; that, as he reached a point where the sidewalk intersected the driveway leading from defendant's premises, defendant's minor daughter backed an automobile from said driveway, suddenly, negligently and without warning, striking and violently throwing plaintiff to the pavement and causing the injuries and bodily pain complained of.
Defendant admitted the operation of the automobile by his minor daughter, but denied all the remaining allegations of the petition. He specially denied any negligence or carelessness on her part and alleged *Page 30 
that the accident resulted from plaintiff's negligence. Defendant denies that plaintiff was struck down by the automobile, maintaining that plaintiff fell as a result of his own unsteadiness and lack of caution; that plaintiff was afforded ample warning of the approach of the automobile, but that, in spite of this fact, plaintiff walked recklessly into its path. Defendant also denied that the alleged injuries were connected with, or grew out of the occurrence, further averring that, immediately after the accident, plaintiff freely admitted that the accident was occasioned solely through his (plaintiff's) fault. Defendant averred also that, though he disclaimed liability in any respect, he offered to have plaintiff examined and treated by his, defendant's physician, but that such offer was refused, and that plaintiff persisted in this refusal for a period of forty-six days following the accident, or "until the matter of plaintiff's claim had been placed in the hands of plaintiff's attorney".
In the district court there was judgment in favor of defendant dismissing the suit. From this judgment plaintiff has appealed.
The record discloses that plaintiff, after visiting at the home of his brother-in-law, adjoining the residence occupied by defendant, proceeded to walk to his home. Located upon the premises of defendant was a driveway, which was skirted for its entire length by a hedge of about five feet in height, thereby obstructing the view of pedestrians approaching from the direction in which plaintiff was walking.
Plaintiff testifies that, as he reached the sidewalk fronting the home of his brother-in-law, he saw an automobile being backed out of defendant's driveway; that he continued on his way and, after negotiating about one-third of the intersection of the driveway and the sidewalk, he was struck down by another car then being backed out by defendant's daughter; that no audible warning was given, and that he did not see the vehicle or anticipate its approach; that the center of the rear bumper struck his right knee, causing him to fall backwards, the blow being so violent that it rendered him oblivious of his surroundings; that defendant assisted him to regain his footing and escorted him to defendant's porch, and that he thereafter received emergency treatment at the home of his brother-in-law.
The versions given by defendant, his wife and daughter, and the daughter's fiance, Mr. Benson, as to the circumstances of the accident, are in substantial agreement. They testify that, after Mr. Benson had backed out the first car along the driveway into the street, plaintiff proceeded to cross the driveway and, while so engaged, stopped and attempted to light a cigar; that, seeing the approaching car, plaintiff, in an effort to avoid the impending danger, lost his balance and fell to the pavement. They further testify that defendant's daughter was driving slowly and that, upon reaching the edge of the pavement which abutted the sidewalk three feet within the driveway, she brought the car to a stop, looked to her left, and, seeing no one, proceeded to "ease out" into the street. These witnesses all admit that no warning or signal accompanied this maneuver. They further testify that they went to plaintiff's assistance, helped him to his feet, and escorted him to defendant's porch, and that plaintiff promptly admitted the accident to be the result of his own carelessness. They testify, also, that defendant offered to summon his doctor to examine plaintiff and administer treatment to his injuries, but that plaintiff declined the offer.
It must be conceded that an automobile driver is not an insurer of the safety of pedestrians who may be nearby. We also recognize, however, the equally sound principle that the backing of an automobile from a private driveway across a sidewalk is dangerous and should not be attempted without extraordinary precaution. In Hight v. Casanas, 6 La.App. 30, in a syllabus written by the court, it was said:
"It is imprudent to back out an automobile from its garage across the sidewalk without taking extra precautions to avoid running down passersby."
The law requires that every person shall take due care for the safety of himself and others according to the circumstances in which he is placed. Hence, under the circumstances of backing out from private premises onto a public street, the nature of the crossing being an element to be considered in the care to be exercised by the driver, courts are unanimous in holding that the driver must use greater care than is required in merely driving along a thoroughfare. If he backs onto the public thoroughfare without first looking for approaching pedestrians and without exercising extra precaution, such as giving a warning or signal of his approach, he is negligent. Brown v. Texas Pacific Ry. Company, 42 La.Ann. 350, 7 So. 682, 21 *Page 31 
Am.St.Rep. 374; Hamilton Wife v. Morgan's L. Texas R. S.S. Company, 42 La.Ann. 824, 8 So. 586; Downing v. Morgan's L. 
Texas Ry. S.S. Company, 104 La. 508, 29 So. 207; Hollins et ux. v. New Orleans N.W.R. Company, 119 La. 418, 44 So. 159; Moore v. Vance, 4 La.App. 353; Dipino et ux. v. Joe Guline Son, La.App., 154 So. 772.
In the particular case before us, the record discloses that as plaintiff approached the private driveway, his vision was undoubtedly obscured. There is nothing to show that plaintiff should have anticipated, at that moment, that a car would emerge from this driveway. On the other hand, defendant's daughter should have foreseen or anticipated that persons might be passing on the sidewalk. She should have assured herself that the path behind her was clear, sounding her horn, repeatedly if necessary, as a warning of the approaching automobile. She was bound to know that pedestrians were likely to be present on the sidewalk, and this demanded extraordinary precaution and prudence, especially in view of the prevailing darkness and the presence of the hedge, which obscured her vision.
Having given neither warning nor signal of her approach, and having made no other effort than that of glancing toward her left, irrespective of the fact that she testifies to not having seen plaintiff, defendant's daughter was guilty of negligence. Her conduct was a violation of a palpable duty which the law enjoined upon her; that is to say, to exercise her rights in such manner as not to unreasonably and unnecessarily imperil the safety of others in the exercise of their rights.
The alleged negligence of plaintiff is not supported by the record. It is shown that he exercised the care and caution required of persons using sidewalks, with the right of assuming that drivers of cars emerging from private premises would take the necessary extra precautions required by law.
As was stated in the case of Mahan v. Everett et al., 50 La.Ann. 1162, 23 So. 883:
"Pedestrians are entitled to the right of way on the sidewalks or banquettes of the city. That is what the sidewalks are dedicated, constructed, and maintained for. Ordinary care is to be observed by those using the same to avoid danger, but not the same alertness is required of them as is the case when they cross streets where vehicles, street cars, etc., have equal rights of way."
Defendant contends that plaintiff's admission promptly after the accident that it resulted exclusively from his own fault, absolves him, defendant, from liability. Though defendant and his witnesses testify to this admission, plaintiff vehemently denies such a statement on his part.
In the case of Farque v. Gulf States Utilities Co., La.App., 140 So. 90, 94, the court declared that such admissions constituted weak testimony and that courts are admonished accordingly, quoting the following from Greenleaf, Vol. I, page 229, section 200:
"With respect to all verbal admissions it may be observed that they ought to be received with great caution. The evidence consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake."
The case of Parker et ux. v. Employers' Casualty Company et al., La.App., 152 So. 373, 374, involved admissions on the part of a plaintiff as to the cause of an automobile collision. The court in that instance declared:
"These admissions of negligence, standing alone, would not be sufficient to mulct the doctor in damages if the evidence did not support his own consciousness of negligence, reflected by the admissions. Liability cannot be created by a defendant's sudden exclamations, nor even by admissions made on reflection, unless there is in fact liability under the law."
Even conceding that plaintiff made the admission as contended by defendant, it is shown that plaintiff, at the time, was in a very nervous condition and was experiencing pain and suffering. This admission, if true, made under these circumstances, is clearly violative of the facts and circumstances reflected by the evidence. We are convinced of defendant's liability and, since our appreciation of the evidence as a whole unquestionably establishes this liability, in fact and in law, our conclusion in this respect cannot be affected even if the alleged admission on the part of plaintiff be accepted as true.
On the trial below, defendant objected to all testimony tendered by plaintiff relative to the nature and extent of his alleged injuries on the ground that plaintiff had declined and refused to submit to an examination *Page 32 
by a reputable physician designated by the defendant and persisted in this refusal for a period of approximately forty-six days following the accident. In support of this objection defendant relies on the doctrine announced in the cases of Kennedy v. New Orleans Ry. Light Company, 142 La. 879, 77 So. 777, and Bailey v. Fisher, 11 La.App. 187, 123 So. 166.
In the Kennedy case, supra, a physician selected by defendant was permitted to make a partial examination of plaintiff shortly after the accident. Thereafter, by correspondence, counsel for the railway company made the request that plaintiff submit to another examination. To this plaintiff consented, but only upon condition that the testimony of the examining specialist should not be used in defense of the suit. Such a condition defeating its purpose, the examination was not made. During the trial defendant asked the court for an order directing plaintiff to permit an examination by physicians of the company and the request was refused on the ground that the court was without authority to issue such an order. Two experts testified for plaintiff as to examinations made by them. The Supreme Court said [142 La. 879, 77 So. 778]:
"We find no fault with the ruling of the trial judge to the effect that he was without authority to require plaintiff to permit an examination of her person; but, on the other hand, we do not see how the jury and the judge could reach a legal verdict and judgment against the defendant upon an ex parte version of physical injuries, of the nature and character of which plaintiff permitted only the witnesses selected by herself to become informed; for, if defendants in such cases can be condemned upon that basis, they will always be at the mercy of the plaintiffs, who have only to complain of injuries not visible outside of their clothing, produce themselves and their own selected witnesses to testify to them, and sit tight, with no fear of possible contradiction. Such a proceeding, however, fails to furnish the principal element required in due process of law, to wit, a hearing, and ordinarily would be dismissed, since a court cannot well place a value upon ex parte testimony."
In the Bailey case, supra, the plaintiff refused to submit to an examination by defendant's physician. At the trial defendant objected to the admission of testimony as to plaintiff's injuries on the part of plaintiff's physician on the ground that it was ex parte. This court held that the trial judge's ruling in sustaining the objection was correct and in accordance with the doctrine announced by the Supreme Court in the Kennedy case, supra.
In the case at bar, the attitude of plaintiff in declining medical aid is shown by his testimony, as follows:
"A. * * * He wanted to send for the Doctor and I says to him I could manage myself better than the Doctor at that time because I was nervous and couldn't get the run of myself and I says `Send for my brother-in-law and sister, Mr. and Mrs. Daly, next door'. He says `Should I send for the Doctor?'. I said like I said I could better attend to myself than the doctor but he didn't send for any doctor."
It is further shown that a week or ten days following the accident defendant again tendered plaintiff medical aid and that plaintiff again declined. This second refusal is explained by plaintiff by the statement that he was then under treatment of his family physician.
It is evident from the record that defendant's sole motive in requesting that his own physician be immediately summoned arose out of his uncertainty as to the probable consequences of plaintiff's injuries and a desire to obtain for plaintiff prompt medical attention. The second offer of medical services was probably also prompted by the same motive, for it is shown that defendant called upon plaintiff to inquire as to the condition of his health, at which time defendant again suggested that the latter's physician be called. Apparently, even though defendant disclaimed liability, he was, as is quite natural, solicitous and apprehensive regarding plaintiff's physical condition, there being, at that time, no suggestion of any claim for damages for the results of the accident.
Plaintiff's refusal under such circumstances, it seems to us, is sufficient to render inapplicable here the facts found in the Kennedy and Bailey cases supra. It is shown that, forty-six days after the accident, plaintiff called at the office of Dr. Howard M. Russell, at defendant's invitation, and was there examined. At the trial below Dr. Levy, plaintiff's physician, and Dr. Russell, both testified as to the nature and extent of plaintiff's injuries. Considering these circumstances, also, the principles *Page 33 
announced in the Kennedy and Bailey cases can have no application.
We conclude that plaintiff's refusal to be treated by defendant's physician during the long period following the accident, to say the most, can only throw doubt upon the nature and extent of his injuries during that period. Russell et al. v. Celentano, 13 La.App. 708, 129 So. 182.
Though we are not unmindful of the sound rule that the conclusions of a court a qua on questions of fact should not be reversed unless there appear manifest error, we are satisfied that plaintiff has amply established the merit of his claim, and we therefore find it necessary to reverse the finding of the judge below.
The record discloses that plaintiff suffered a slight swelling on the back of the head, bruises and brush burns of both elbows, laceration of the palm of the left hand, contusions of both knees with a discoloration on the outlying side of the right leg, and a sacro-iliac strain, with pain referable to the right side. He was examined by Dr. Levy on the morning following the accident and received treatment two to three times a week until July 15, 1939, or a period of ten days. The sacro-iliac strain expressed itself ten days after the accident, and the attending physician strapped plaintiff's back and recommended the use of a sacro-iliac belt. It is shown that plaintiff has never availed himself of this belt, relying upon the periodical applications of adhesive tape for his comfort. The record satisfies us that the sacro-iliac strain is not of serious moment, though we appreciate the fact that injuries of such a nature are usually accompanied by pain and discomfort. It is further shown that ten days after the accident plaintiff resumed his customary daily walks of two to four miles and that from that time he has attended to his daily visits to the stock exchange. In view of these circumstances, we are justified in concluding that the sacro-iliac strain is slight, to say the most.
We feel that an award in the amount of $300 for the injuries, pain and suffering experienced by plaintiff is reasonable and commensurate. The bill for medical services in the amount of $25 and for drugs in the amount of $10 is not questioned.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered that there be judgment in favor of plaintiff, Simon S. Levy, and against Joseph T. White, defendant, in the full sum of $335, with legal interest from judicial demand and for all costs.
Reversed.