HOOD, Judge.
This is an action for damages instituted by Mr. and Mrs. Willie Martin against the City of Opelousas and its insurer, United States Fire Insurance Company. Plaintiffs allege that Mrs. Martin sustained personal injuries as the result of a fall which she sustained while walking across a street in the City of Opelousas, Louisiana. The trial judge rendered judgment in favor of plaintiffs, and defendants have appealed.
The accident occurred about 2:00 p. m. on March 18, 1963, at or near the intersection of Bellevue and Market Streets in Opel-ousas. This intersection is located near the center of the business district of the city, and there is a considerable amount of traffic at that point. Bellevue Street runs east and west, and Market Street runs north and south. The streets are paved with concrete, but Bellevue has been overlaid with asphalt, and the layer of asphalt on that street extends a few feet north of the intersection, covering a portion of Market Street just north of the crossing.
A concrete sidewalk runs along the north side of Bellevue Street, but the sidewalk, does not cross Market Street, and there is no walkway or lane marked for pedestrians across that street along the north side of this intersection. At the northwest corner of the intersection, the sidewalk ends abruptly at a curb on the west line of Market Street, the curb being seven or eight inches high. At the northeast corner of the intersection, the sidewalk terminates at some steps leading from the level of the sidewalk down to the street level on the east edge of Market Street.
Shortly before the accident occurred, Mrs. Martin went to the telephone office, which was located in the northwest quadrant of this intersection, to pay her telephone bill. Upon leaving that office, she walked to the northwest corner of the intersection, and from that point it was her purpose to walk in an easterly direction, across Market Street to the northeast corner of that crossing. She waited on the sidewalk near the curb until the traffic light changed, and then she waited a moment longer to determine whether an automobile on Bellevue Street intended to turn into her pathway. She testified that after determining that the traffic was clear, she then stepped off the curb onto Market Street with her right foot, and that as she was taking the next step with her left foot, the toe of that foot struck a raised place in the surface of Market Street, tripping her and causing her to fall. She contends that as a result of that fall she sustained injuries, consisting principally of an umbilical hernia.
Plaintiffs contend that the raised place in the street upon which Mrs. Martin fell constituted a defect which was dangerous, that it was calculated to cause injury and that it was in the nature of a trap. They contend that the city was negligent in failing to repair this defect, and that defendants are liable to plaintiffs for the damages which they sustained as a result of this accident.
It is settled law that a municipality is not an insurer of the safety of pedestrians. It must keep sidewalks and public walkways reasonably safe, but the maintaining of them in perfect condition is not necessary. To render a municipality liable in damages because of a defect in a sidewalk or walkway, the defect complained of must be patently and obviously dangerous to a reasonably careful and ordinarily *225 prudent person, and it must be in the nature of a trap, or one reasonably calculated to cause injury. White v. City of Alexandria, 216 La. 308, 43 So.2d 618; Arata v. Orleans Capitol Stores, Inc., 219 La. 1045, 55 So.2d 239; Green v. Acosta, La.App. 1 Cir., 173 So.2d 291 (writ refused); Kidder v. City of Opelousas et al., La.App. 3 Cir., 185 So.2d 66, and cases cited therein.
The applicable law was stated in St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273, as follows:
“In order to assess liability in a matter such as the instant one, it must be shown (1) that the unsound condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent person, and (2) that the municipality had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. ‘In other words, if the defect is slight, there can be no recovery and, even if it is patently dangerous, the municipality is not responsible unless it has had actual notice of it or unless the condition has been permitted to remain in its dangerous state for such a length of time as to warrant the conclusion that the municipality is negligent in failing to discover and correct it.’ Parker v. City of New Orleans, La.App., 1 So.2d 123. See, Cobb v. Town of Winnsboro, La.App., 49 So.2d 625; Foster v. Employers Liability Assurance Corporation, Ltd., La. App., 129 So.2d 913; Bond v. City of Baton Rouge, La.App., 129 So.2d 887.”
As stated in Bustamente v. City of New Orleans, La.App. 4 Cir., 175 So.2d 404 (cert. denied), “The facts' and surrounding circumstances of each individual case control in determining whether, for the purposes of imposition of liability upon a municipality, a sidewalk defect was dangerous or in the nature of a trap.” See also, St. Paul v. Mackenroth, supra.
The defect in the street over which Mrs. Martin tripped was described by witnesses as being a “bump,” or a “hump,” or a “raised place” in the surface of Market Street. It was located in line with the sidewalk which runs along the north side of Bellevue Street, and it was in the path which pedestrians ordinarily would use in walking from the northwest corner to the northeast corner of this intersection. As we have already pointed out, there was no sidewalk, walkway or marked lane for pedestrian traffic at the place where this accident occurred.
The bump or raised place in the street was about six inches in diameter, and at its apex or highest point it was approximately one and one-half to one and three-fourths inches higher than the surrounding surface of the street. The west side of the bump was almost vertical, but all of the other sides of it sloped gradually from the apex down to the street level. This raised place was located on that portion of Market Street which was overlaid with asphalt. The street commissioner of the City of Opelousas inspected this portion of Market Street shortly after the accident occurred, and he testified that the defect was “very slight,” that it was located directly over an expansion joint in the concrete paving of that street, and that “the heat might have made the expansion joints tighten where it made a little bump.” We agree with this city official in his statements as to the nature and cause of this defect.
An iron grille, grate or grating is located on the surface of Market Street, adjacent to the west curb of that street and a few feet north of this intersection. This grille appears from photographs to be from eighteen to twenty-four inches square. Its construction is such that it has several large holes in it, and it was installed for drainage purposes. The bump or defect upon which Mrs. Martin tripped was locáted eight inches south of this grille or grating.
At the time the accident occurred, the weather was clear, the sun was shining and the street was dry. The evidence, including the testimony of witnesses and photographs of the scene, shows that this *226 irregularity in the surface of the street could be seen easily by a pedestrian crossing the street at that point. It particularly could be seen by a person approaching it from the west, as Mrs. Martin was doing at the time of the accident.
Mrs. Martin is five feet tall and she weighed more than 255 pounds when this accident occurred. She was wearing tennis shoes at that time. She states that because of her obeseness she is unable to see her feet as she stands or walks, but she can see the sidewalk immediately in front of her. She further testified that on this occasion she did not look at the surface of the street ahead of her before she fell, because she was engaged in watching traffic conditions. She states that prior to her fall she did not see the bump on which she tripped, and neither did she see the iron grille or grating which was located just eight inches from that bump.
None of the witnesses who testified had' ever seen or heard of anyone stumbling or falling over this defect in the street prior to the time the accident involved here occurred. The city has never received a report of any other accident which in any way could be attributed to this raised place in the asphalt. This particular defect in the street has never been pointed out to any official or employee of the city prior to the time this accident occurred, and no request has ever been made to repair it. The evidence does not show how long the defect existed in the street. It does show that the asphalt covering was not applied to Belle-vue Street until 1961, or about two years before this accident occurred, so this bump in the asphalt obviously occurred within that time. We find, although counsel for plaintiffs disagrees with our interpretation of the testimony, that both of the city officials who appeared as witnesses stated that they did not know that this bump or raised place in the surface of the street existed until the time this accident was reported to them.
As we have already pointed out, to render a municipality liable in damages in an action of this kind, one of the essential elements of proof is that the defect complained of was patently and obviously dangerous to a reasonably careful or ordinarily prudent person, and that it was in the nature of a trap, or was one from which danger may reasonably be anticipated.
We have considered numerous cases involving falls sustained by pedestrians from tripping or stumbling over defects in public sidewalks. Recovery was allowed in some of those cases and it was denied in others, but it appears to us that recovery has been denied in cases where the facts are similar to those presented here. In White v. City of Alexandria, supra, for instance, a seventy-three year old woman, who stumbled on a concrete slab which was raised one-half inch to two inches above the surface of the sidewalk, was denied recovery by our Supreme Court on the ground that the defect was “readily and easily observable,” and that it “was not dangerous or calculated to cause injury,” and that the sidewalk “was maintained in a reasonably safe condition for persons exercising ordinary care and prudence.” In Simoneaux v. American Manufacturers Mutual Insurance Company, La.App. 4 Cir., 159 So.2d 742, plaintiff’s three year old son fell on “a mound of hardened concrete about 6 to 8 inches in diameter and an inch or an inch and a half in height above the concrete driveway.” The court denied recover}'-, holding that “the mound of concrete was not inherently dangerous,” and that the defendant’s insured “could not reasonably have foreseen that it would cause or contribute to an accident or injury to a small child.” In Byrnes v. National Casualty Co., La.App.Orl., 45 So.2d 408, an elderly lady stumbled and fell in a water-filled hole in a parking lot, the hole being two by four feet in size and not over five inches deep. The court rejected her demands for damages because “there was na actionable negligence insofar as the surface of the lot was concerned.” In Hamilton v. City of Monroe, La.App. 2 Cir., 72 So.2d *227 576, Mrs. Hamilton tripped over a steel curb guard which had broken and which protruded one or two inches above the surface of the sidewalk, the natural expansion and contraction of the concrete probably accounting for the defect. In denying recovery, the court stated that the proof “does not sufficiently show that the condition of the sidewalk and curb constituted such a dangerous defect as to make it a trap.” In Sharp v. City of New Orleans, La.App. 4 Cir., 144 So.2d 6, where plaintiff stumbled in a hole six inches deep and two feet square, her demands were rejected because the defect in the sidewalk “was apparent.” In McGurk v. City of Shreveport, La.App. 2 Cir., 2 So.2d 687, plaintiff stumbled over a ramp extending from the doorway of a building about ten inches onto the sidewalk, the ramp having a maximum height of six inches. The court denied recovery because this ramp was “neither in the nature of a trap nor one from which danger could reasonably be anticipated.” And, in Goodwyn v. City of Shreveport, 134 La. 820, 64 So. 762, our Supreme Court held that there was no actionable negligence where plaintiff tripped on a portion of the sidewalk which was elevated from one and one-quarter to two and one-half inches above the level of that walkway.
Plaintiffs cite and rely on the cases of St. Paul v. Mackenroth, supra, Bustamente v. City of New Orleans, supra, and Green v. Acosta, supra. Recovery was allowed in the first two cited cases, but it was denied in the Green case because of contributory negligence on the part of the injured plaintiff. The facts in each of those cases, however, are so different from those pre^ sented in the instant suit that we feel that the holdings in those cases are not apposite here. In the St. Paul case, for instance, plaintiff stumbled over a four-inch elevation in the sidewalk. The accident occurred after dark, and the defect could not be readily observed because the sidewalk “was somewhat dark and shaded by trees,” and there was nothing to warn plaintiff of the fact that he was approaching an abrupt elevation in the walkway. After noting those facts, our Supreme Court held that the defective sidewalk and driveway “constituted a trap or was in the nature of a trap,” and thus plaintiff was permitted to recover. In the Bustamente case, the plaintiff fell when she stepped into a hole in a brick sidewalk, the hole being caused by some missing or displaced bricks. The hole could not be seen, however, because it was covered with mud, debris and leaves from a large oak tree nearby. The court stated, “Had not the hole been concealed from view, she would certainly have noticed it. The hole, which was invisible, constituted a trap or was in the nature of a trap which could not have been reasonably anticipated by a pedestrian.”
In Green v. Acosta, supra, the third case relied upon by plaintiffs, a pedestrian slipped and fell on a section of a public sidewalk which had become covered with oil and debris. A tank had been dragged across the sidewalk, and in the process oil had leaked out, covering a substantial area of the walkway. The demolition of a building nearby had caused the sidewalk to be “virtually covered with debris including fragments of lumber, metal, glass and scraps of other building materials.” Children had added to the accumulated debris by breaking glass bottles on the sidewalk, and weeds of considerable height had been permitted to grow along its sides. The court observed that under those circumstances the defendants would be liable to plaintiff unless the plaintiff was shown to have been contribu-torily negligent. It then found contributory negligence on the part of plaintiff and recovery was denied. We agree with the reviewing court that the defect in that case “was obviously and patently dangerous,” and we think it clearly was in the nature of a trap, because the oil on the sidewalk was at least partially concealed by the debris which covered it. In any event, the nature of the defect in that case is so far different from the one involved in the instant suit that we do not feel that the holding in that case supports plaintiffs’ claim here.
*228 Most, if not all, of the authorities which we have cited relate to defects in sidewalks or walkways which were designed primarily for pedestrian use. Plaintiffs argue here, however, that the city owes a greater duty to maintain in a safe condition the crosswalk or pedestrian lane which crosses a city street than it does the surface of an ordinary sidewalk. They base that argument on the contention that the pedestrian’s attention is diverted by traffic as he endeavors to cross the street, whereas there is no such diversion as he walks along the sidewalk. We are unable to agree with plaintiffs in this contention. A sidewalk is intended primarily for the use of pedestrians, and for that reason a pedestrian is entitled to assume that it is sufficient and reasonably safe for use as a public walkway, subject only to such imperfections as might be readily observed by the use of ordinary care. St. Paul v. Mackenroth, supra. A city street, on the other hand, is intended primarily for use by motor vehicles and it is designed and constructed for that purpose. When a pedestrian undertakes to cross a city street, therefore, we think the pedestrian is under a duty to exercise a greater degree of care than is required of him on a sidewalk, and the city has a right to assume that he will exercise that degree of care as he crosses the street. In view of this added duty which rests on the pedestrian, our conclusion is that the city at least is under no greater responsibility to maintain a street crossing in a safe condition than is its duty with reference to a sidewalk. Mahan v. Everett, 50 La.Ann. 1162, 23 So. 883 (1898) ; Levy v. White, 5 So. 2d 28 (La.App.Orl., 1941) ; Cole v. Central Contracting Company, 5 La.App. 513 (1926); Richmond v. Schonberger, 111 Va. 168, 68 S.E. 284; Barrett v. City of Virginia, 179 Minn. 118, 228 N.W. 350; and McQuillin, Municipal Corporations, 3rd Ed., Vol. 19, Sec. 54.85, 54.120, 54.129.
Our conclusion, after reviewing all of the evidence in the instant suit, is that the very small bump or raised place in the asphalt covering of the street where Mrs. Martin fell was not of such a nature as to be patently and obviously dangerous to a reasonably careful and ordinarily prudent person, and that the defect was not of such a nature that it might reasonably be calculated to cause injury. It was observable by a reasonably prudent pedestrian, using ordinary care, and thus it was not a defect which was in the nature of a trap. We think the sole cause of the accident was Mrs. Martin’s failure to observe the condition of the street on which she was walking, and that the City of Opelousas was not negligent in failing to correct this relatively slight imperfection or irregularity in the surface of the street.
Since we have concluded that the City of Opelousas was not negligent in failing to correct the alleged defect, it is unnecessary for us to consider the question of whether the municipality had notice, either actual or constructive, of the existence of such a defect, or the question of whether plaintiffs are barred from recovery because of the contributory negligence of Mrs. Martin.
For the reasons herein set out, the judgment appepaled from is reversed, and judgment is hereby rendered in favor of defendants, City of Opelousas and United States Fire Insurance Company, and against plaintiffs, Willie Martin and Mrs. Alice Hawkins Martin, rejecting plaintiffs’ demands at their cost. The costs of this appeal are assessed to plaintiffs-appellees.
Reversed and rendered.
FRUGÉ, J., dissents with written reasons.