CLACK v. LIGGETT DRUG CO., Inc., et al.

No. 1522.

Court of Appeal of Louisiana. First Circuit.
Dec. 9, 1935.

Albritton & Hardin, of Baton Rouge, and C. E. Hardin, of Lake Charles, for appellants.

Chas. A. Holcombe, of Baton Rouge, and E. S. Muse, of St. Francisville, for appellee.

LE BLANC, Judge.

This is a suit for damages for personal injuries brought by an emancipated minor, Miss Emily Barrow Clack, against the defendant Liggett Drug Company, Inc., and its indemnitor, the Employers' Liability Assurance Corporation, Limited, of London, England.

The defendant drug company operates a drug store on the ground of the Triad Building situated at the northwest corner of Third and Florida streets in the city of Baton Rouge. The store faces Third street, which runs almost due north and south, and at a distance of about 25 feet from the corner of the two streets, on the north side of Florida street, which runs almost due east and west, it operates a freight elevator, with an underground shaft. The opening of the shaft is on the sidewalk which adjoins the buildings, and, when not in use, the opening is closed by means of a double steel door or lid which is flush with the sidewalk pavement. The door consists of two plates which extend from the north side of the sidewalk, southward, and when open stands perpendicularly; one on the east and the other on the west side of the opening. In order to hold them rigid, when so standing, an iron bar, called a "stretcher bar," is fitted in two eyebolts; one at the south end of each door, on the inside. The door on the west side cannot fall over to the west more than a few inches from its center position when standing open because it there comes in contact with a pilaster which juts out from the wall of the building. The door on the east side is not afforded such protection, and, unless it is held rigid by the iron stretcher bar when standing perpendicularly, it is apt to fall over toward the east. The door on the east side is 33 inches wide running east and west, and 56 inches running north and south. The one on the west side measures 56 inches north and south, and 34 inches east and west. When they are both standing perpendicular therefore, or when the one on the west is resting against the pilaster and the one on the east falls over to the sidewalk on that side, there is an opening in the sidewalk 56 by 67 inches. There is no positive measurement in the record of the depth of the shaft, but it is referred to by some witnesses as being 5 or 6 feet deep. The bottom and walls are lined with concrete.

During the afternoon of March 12, 1934, at approximately 10 minutes of 4, the plaintiff, accompanying a blind lady, Miss Lillie Holland, was walking on Florida street in the direction of the opening of this elevator shaft. The elevator was being used at the moment, and both doors were standing in a perpendicular position. As she reached the door on the east side, her body came in contact with it in some manner, and the iron stretcher bar, which was used to hold both doors open, slipped out of position. The east door fell over toward the sidewalk on the east side, and plaintiff fell into the shaft hole sustaining the injuries which gave rise to this suit for damages.

Miss Clack at the time of the accident was 19 years old. She was a student at the State Institute for the Blind at Baton Rouge, and, although she has impaired vision, is by no means blind. Miss Holland, the lady she was accompanying, is a teacher at the Institute, and is totally blind.

In her petition plaintiff alleges that as she and her companion were walking west in the direction of the elevator shaft, the rays of the evening sun were shining directly in her eyes, and that, under the circumstances, an opening on the sidewalk such as the one in front of them, left unguarded and without any protection to keep the public from falling into it, constituted a veritable deathtrap.

In describing the manner in which she fell, she avers that her right leg became entangled with the chains that are attached to the doors and used to operate them, and that she was thus suspended head downward in the pit. The severest injury she claims was to her right leg, for which alone she seeks to recover the sum of $5,000. She claims impairment to her nervous system for which she asks $2,000; impairment of her mental ability and loss of standing in school for which she asks $1,000; mental pain and anguish for which she seeks to recover $1,000; she claims that for the humiliation, mortification, and embarrassment caused by her body being exposed when she was suspended by her leg, she is entitled to recover $640, and for doctors' bills, $360. Her total demand therefore is for the sum of $10,000, judgment for which is prayed for in solido against both defendants.

The defendants, for answer, deny any negligence on the part of Liggett Drug Company, Inc., in the manner of construction and operation of the opening of the elevator shaft, and aver that to the contrary, it was properly constructed and guarded when open by the iron bar fastened to the south end of each door, and besides, on the occasion of Miss Clack's accident, there was a red flag attached to each door to serve as a warning to people who might be walking near the opening on the street. It is specially denied that on that particular day and at the hour she claims to have been on the street at this point, the sun's rays could have blinded Miss Clack. In the alternative, it is pleaded that she was guilty of contributory negligence in not keeping a proper lookout and observing where she was going; in not seeing and heeding the warning given by the two red flags attached to the doors of the opening; and in walking into the opening in broad daylight. Finally, it is urged that the plaintiff had the last clear chance of avoiding the accident and was guilty of negligence in not having taken advantage of it.

The trial judge, without assigning written reasons, rendered judgment in favor of the plaintiff and against both defendants, jointly and solido, for the sum of $3,535, of which amount $3,000 is for the personal injuries sustained by plaintiff, $350 for humiliation and embarrassment, and $185 for expert witnesses' fees. Both defendants have appealed.

Miss Clack's recital as to the exact happening is short and simple. She says that she and Miss Holland had turned the corner on Florida street; she occupying the north side of the sidewalk and that Miss Holland was on her left, holding her by the left arm. She did not know of the presence of this elevator shaft hole. The sun was in her face at the moment and she did not see the doors nor the warning flags which were attached to them. "I suppose as I hit that door" she says, "it gave way with me and I went down in there until somebody pulled me out."

The defendants strenuously contend that Miss Clack's vision could not have been affected by the rays of the sun, and in support of their contention they produced the testimony of Dr. D. V. Gutherie, professor of Astronomy, and Dr. Leo La Salle, Dean of the Engineering School, at Louisiana State University, who, after having been given certain data, made careful and minute scientific investigations and came to the conclusion, assuming of course that all the facts given them were exact, that it was impossible for the sun's rays to have struck the eyes of a person of the height of Miss Clack at that particular time of the day on March 12, 1934. The accuracy of the calculations made by these two learned men is not questioned, but they are necessarily based on hypothetical facts. Realizing how very improbable, not to say impossible, it is for all the assumed facts taken into consideration to have corresponded exactly with the actual facts in existence at the time of the accident the court does not feel justified in rejecting Miss Clack's statement that the sun was shining in her face at the time, on this testimony alone. Besides, we do not attach too much importance to this feature of the case, as we do not think that it was so much an impairment of plaintiff's vision by reason of the sun's rays that caused her accident, as the failure of the iron spreader bar to have remained in position and hold the steel doors rigid when Miss Clack's body came in contact with the one on the east side. Either it was defective in its construction or arrangement, or it had not been properly secured on that day. At any rate, it did not serve the purpose for which it was intended, and, because it did not, the plaintiff was injured.

The evidence tends to show that it was in the manner that this bar was attached to the two doors, that it was faulty, as certainly the pressure of Miss Clack's body only, she weighing 114 pounds, should not have been sufficient to disengage it and cause one of the doors to collapse. Mr. Reiner Swart, a civil engineer employed by the plaintiff to make an investigation of the construction of the opening and shaft, testified that the very same thing happened when he applied a pressure which he estimates at about 70 pounds against this same door. The spreader bar fell in the same manner, and the door on the east tilted over toward the sidewalk.

Mr. W. H. Booth, building inspector for the city of Baton Rouge, also made an investigation of the shaft hole, and came to the conclusion, as did Mr. Swart, that the method of arranging for the security of these doors when open was improper, and that in its then condition the shaft hole was a dangerous instrumentality.

We are of the opinion that the proof amply supports the charge of negli-

gence against the defendants. Adequate protection was not afforded the public using the sidewalk on this street, in the maintenance and operation of this dangerous contrivance. A private individual or corporation, appropriating the streets of a municipality by placing thereon or thereunder some construction which renders the use thereof by the public more hazardous, has the duty, the same as the municipality itself when so doing, of protecting and guarding the same against the increased danger occasioned thereby. Such constructions are regarded as a nuisance, and the owner who operates one is liable to any person, who, using due care, sustains special injury therefrom. Dillon on Municipal Corporations, vol. 4, par. 1725.

■ Having determined the issue of the negligence of the defendants, the next question is, Was the plaintiff guilty of contributory negligence which would bar her recovery? Under the facts presented, we think not. She is shown to have been unfamiliar with this part of the city, and had no knowledge of the presence of this construction in the sidewalk. The only duty the law imposed on her as a pedestrian on the sidewalk was to use ordinary care, and this, as held in Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58, did not necessitate her looking constantly where she was going. She had the right to assume that the sidewalk was safe for pedestrian traffic, and she had the further right to assume that this construction, which the law regards as a nuisance, was maintained in safe and proper condition, and would not collapse upon her body coming in contact with any part of it. It must have been an unconscious act on her part, as she does not know much about how it happened; her explanation being merely that she "supposed" she hit the door and it gave way with her. In our opinion, she was not lacking in the duty of using ordinary care as a pedestrian on that sidewalk at that time, which is all that the law required of her.

Under our view of the case, there is no importance to be attached to the presence of the red flags attached to the doors as they stood open. They certainly did not serve as a warning that the stretcher bar which was used to hold the doors rigid would slip and fall on the slightest pressure being placed against either of them. Moreover, it is doubtful, from the testimony, whether these flags served the purpose of a warning at all, as some of the witnesses say

that, in the manner in which they were attached, it was difficult to see them.

We find it unnecessary to discuss defendants' plea of last clear chance, as no mention is made of it in brief of counsel on either side. Besides, under the facts presented we do not think the doctrine can have any application in this case.

■ On the question of liability on the part of the defendants, we find ourselves in accord with the conclusions reached by the district judge. We believe, however, that he was a bit too liberal in his award, and have decided to reduce it somewhat.

There is no doubt that Miss Clack went through a shocking experience, and that as a result thereof she suffered considerable pain, and her nervous system has been upset. The medical testimony as a whole does not indicate that her condition is as bad as she really and conscientiously believes it is. She did not remain in her suspended position in the pit more than a few minutes. Assistance reached her right away, and, as soon as her foot was disengaged from the chain, she was removed and taken to a doctor's office. She was able to return to the Institute on a street car, not long after leaving the doctor's office. She afterwards developed a case of traumatic neurosis which, in the opinion of some of the doctors who testified in her behalf, is to be attributed to the accident and the injuries she received. She is said by one of these witnesses to have "an area of numbness or anesthesia on the right side of her body extending from about the middle of the thorax to the middle of the thigh on the right side." The symptoms in such a condition, this same witness says, are due not so much to destruction of tissue as to other factors, "factors which are purely mental, as shock, anxiety, apprehension, et cetera." We think it can fairly be said that the preponderance of the expert testimony regarding her condition is that she will entirely recover in the course of from 6 to 12 months.

The shock to her nervous system constitutes Miss Clack's biggest item of damage, as the medical experts are of the opinion that the physical ailments she complains of are due to the neurosis from which she suffers. It is an aggravated case, however, and whilst the amount allowed is found to be excessive, she is entitled to substantial damages which we fix at $1,250. She no doubt is entitled also to recover damages for the embarrassment and humiliation she

had to endure while suspended head downward in this shaft hole, exposed to the view of the public on this city street. These damages we fix at $250. We think that the amounts allowed by the district judge for expert witnesses' fees are proper, and they will stand. The total amount of the judgment will accordingly have to be reduced from the sum of $3,535 to the sum of $1,685, and, as thus reduced and amended, it will be affirmed.

For the foregoing reasons, it is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount of the award from the sum of $3,535 to the sum of $1,685, and that, as thus amended, it be affirmed.