GLADNEY, Judge.
In this direct action against the City of Winnfield and its insurers, Ina Carter sues for damages ex delicto. From a decree in favor of plaintiff the defendants have appealed.
Mrs. Carter received injuries while walking along the sidewalk on Beville Street in Winnfield when her forehead struck a meter box that protruded over the sidewalk. It is stipulated that the meter was installed on the east side of the Mayor’s office and Utility Department office by city employees and that the City owns the building and the electrical dstribution system of the City of Winnfield. The meter box in question is S3 inches above the concrete surface of the sidewalk with the following dimensions: 12 inches in width, 24 inches high and it protrudes from the building over the sidewalk 10}/£ inches.
Claimant, who lived 20 miles from the City, drove there on the morning of December 18, 1965 to shop. She was accompanied by her daughter, Linda, 26 years of age. Mrs. Carter did not carry an umbrella and was wearing her eye glasses as she walked along the sidewalk next to the Mayor’s office and the Utility Department office. She testified:
“Well, as we were walking along there, well it was raining. So, as we were walking along, it was raining. Not too hard, you know, but pretty much. So, I said to my daughter, I said, when we got to this building where the meter box was, I said, let’s walk by the side of this building and we won’t get so wet. That was what I said to her. So as we walked on there, well, I had ran into this, you see. Well, it just knocked me down. I didn’t know anything else.”
A similar version was given by Linda Carter:
“Well, as we come on to Beville Street, it was raining. And my mother had said, let’s walk up close to the building and maybe the overhang of the building will keep the rain off of us and we won’t get so wet. And as we was walking along, we had our heads down trying to keep some of the rain out of our face. And, of course, both of us wear glasses. * * * to keep the rain from hitting our glasses. And she hit the box and it knocked her out and I picked her up. And her glasses fell off and I attempted to carry her on into U. B. Carpenter’s Department Store, that was the closest building, so we could get something done.”
The foregoing testimony, which was not disputed, discloses that the condition of the weather prompted the two women to walk very close to the building with their heads down as some protection from the rain. Their pace was unhurried but Mrs. Carter did not observe the protruding meter box.
The issue as to liability raises questions of negligence, whether the City was at fault in its location of the meter box and whether or not Mrs. Carter failed to exercise due care in not observing the meter box. The plaintiff alleges negligence by the City of Winnfield in mounting and placing the meter on the side of its building abutting the sidewalk at a level that was unsafe and not of sufficient height above the ground to give the pedestrian free passage. This contention is met by the allegation of defendants that the sole cause of the accident was the negligence of plaintiff in failing to watch where she was walking and to maintain a proper lookout. Alternatively, contributory negligence is charged.
Our jurisprudence has established that a municipality is not an insurer of the safety of pedestrians. Neither is an abut *512 ting property owner whose liability does not rest on ownership but in negligence in creating an obstruction dangerous to pedestrians. Thus, a person walking on the sidewalk in the exercise of ordinary care who is injured by an obstruction has a cause of action against the party creating the obstruction. LSA-C.C. Art. 2315 ; Degeneres v. Pan-American Petroleum Corporation, La.App., 153 So. 481 (1st Cir. 1934); Clack v. Liggett Drug Company, La.App., 164 So. 482 (1st Cir. 1935); Bordenave v. Silverman, La.App., 2 So.2d 747 (Orl.1941); Lee v. City of Baton Rouge, 243 La. 850, 147 So.2d 868 (1963).
A pedestrian is entitled to assume that the sidewalk is sufficiently and reasonably safe for use as a public walkway, subject only to such imperfections as might be readily observed by use of ordinary care. He need not necessarily keep his eyes fixed but may not be completely oblivious to the conditions of the walkway. Green v. Acosta, La.App., 173 So.2d 291 (1st Cir. 1965, writ denied); Kidder v. City of Opelousas, La.App., 185 So.2d 66 (3rd Cir. 1966); Martin v. City of Opelousas, La. App., 185 So.2d 223 (3rd Cir. 1966, writ refused).
The facts and surrounding circumstances of each individual case control in determining whether, for purposes of imposition of liability upon a municipality, a sidewalk defect was dangerous or in the nature of a trap. Bustamente v. City of New Orleans, La.App., 175 So.2d 404 (4th Cir. 1965). See also Martin v. City of Opelousas, supra; St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964).
Mrs. Carter was not a very tall person but tall enough to strike her head against a portion of the meter box. The height of the box, 53 inches above the sidewalk, coupled with the fact that it protruded some 10 inches from the building, in our opinion, presented an obstruction in the nature of a trap causing foreseeable danger to pedestrians burdened with poor vision, and those seeking protection against weather conditions which prevented their normal exercise of vision. The trial judge made this pertinent comment:
“ * * * It is perhaps correct to state that in normal weather conditions a person walking along the sidewalk would keep a lookout ahead but it is also reasonable to expect that when bad or rainy weather comes, a person will walk with their heads down, perhaps watching the sidewalk but not anticipating any obstruction up in the air. * * * ”
The burden of proving contributory negligence rests upon defendants. In the instant case it is our opinion that the meter box was virtually a trap and plaintiff was not negligent in walking forward and looking downward in protection from the weather. Certainly on a clear normal day a pedestrian such as Mrs. Carter undoubtedly would have observed the meter box and avoided walking into it. At the particular time, however, such weather conditions did not prevail and because of the rain and weather she walked close to the building and inclined her head somewhat to avoid having her glasses made wet or damp by the rain, in which event her vision would have been somewhat obscured. She was walking normally and reasonably in every respect except that her vision was not directly forward but downcast.
Defendants have relied strongly on our decision in Youngblood v. Newspaper Production Company, La.App., 158 So.2d 432 (2nd Cir. 1963, writ refused), and other cases, such as Turner v. Aetna Casualty & Surety Company, La.App., 175 So.2d 304 (2nd Cir. 1965, writ refused) and Spinks v. General Fire & Casualty Company of New York, La.App., 175 So.2d 339 (2nd Cir. 1965) wherein the principle is established that a pedestrian must see those defects which are obvious and can be noticed by an ordinary and reasonably prudent person, and that while a pedestrian is not required to look for hidden dangers, he more or less is bound to walk with his *513 eyes open and to observe his course and see what is open and apparent. These cases are distinguishable upon their particular facts from the instant case where weather conditions affected her responsibility of seeing the meter box.
We hold that the placing of the meter box in the position where it imposed a danger upon pedestrians was an act of negligence; and we further hold that Mrs. Carter was exercising ordinary and reasonable care at the time she was injured. No question is raised as to quantum and the damages as fixed by the trial court has been properly established by the evidence.
The judgment appealed is affirmed at appellants’ cost.