321 So.2d 819 (1975)
Clarence WILLIS
v.
The STATE of Louisiana ex rel. the LOUISIANA DEPARTMENT OF HIGHWAYS et al.
No. 10434.
Court of Appeal of Louisiana, First Circuit.
September 2, 1975.
Rehearing Denied November 24, 1975.
Writ Refused January 16, 1976.
*820 William Doran, Baton Rouge, for Highway Dept.
W. Paul Hawley, Lafayette, for Willis.
Before SARTAIN, ELLIS and PICKETT, JJ.
PICKETT, Judge.
This is a suit for personal injuries and damages arising out of an accident that occurred on April 26, 1965, in the Town of Baldwin, St. Mary Parish, at the intersection of U.S. Highway 90 and Rosebud Street. Plaintiff alleges that he was walking on the shoulder of U.S. Highway 90, with the aid of crutches, when one of his crutches plunged through an opening in a drainage grate, causing him to fall and break his right leg. Plaintiff alleges that his accident and the resulting injuries and damages were caused by the negligence of the Louisiana Department of Highways in the design, installation and maintenance of the drainage grate and the right of way area in which it was located.
The Plaintiff's original suit was against the State of Louisiana, ex rel The Department of Highways, and others. The actions involving all of the defendants except the Department of Highways were settled prior to the trial of this case.
From a judgment in favor of Plaintiff, the Department of Highways appeals. Plaintiff answered the appeal and prayed for an increase in the $15,000.00 award granted by the lower court.
The evidence establishes that the accident complained of occurred at the point *821 referred to in the first paragraph hereof, and that at this point U.S. Highway 90 runs in a generally east-west direction through the Town of Baldwin. Rosebud Street intersects the south side of U.S. 90, and extends in a southeasterly direction therefrom. The drainage grate complained of is situated at the intersection of U.S. Highway 90 and Rosebud Street in the south shoulder of said Highway.
Immediately prior to the occurrence of the accident the Plaintiff, Clarence Willis, with the aid of crutches, had just crossed from the north side of U.S. Highway 90 to the south side of said Highway, and onto the south shoulder. He was in the process of crossing the shoulder of the road, intending to get onto a sidewalk that paralleled the Highway, when the tip of one of his crutches went into the above referred to drainage grate, which was located in the shoulder of the road, causing Mr. Willis to lose his balance and fall. He sustained a broken leg in the fall.
The Plaintiff alleges that the Department was negligent in a number of respects, each of which was treated separately in a well-written, well-reasoned opinion of the Trial Judge.
The evidence establishes that the drainage grate in question was installed in late 1963, in connection with the performance of State Project No. 713-13-89, which was a State Highway Department project to widen and improve the highway and related work to the State-owned right-of-way of the highway, in an area that included the Town of Baldwin.
The overall dimensions of the drainage grate were 2 feet 4¼ inches by 3 feet 4 inches. The metal grid consisted of 70 openings, each 23/8th inches square, divided by bars, or "dividers", 11/8th inches in width. The metal grid was 4½ inches in depth. The grate was of cast iron in a steel frame, with a total weight of 652 pounds. There was no evidence of faulty design, construction or installation. On the contrary, the drainage grate was a standard grate, used regularly by the Highway Department, and this particular grate was installed in accordance with the plans of the project. The top of the grate was below the level of the surrounding ground.
In the succinct language of the opinion of the Trial Judge: "Correct engineering and construction procedures were followed in regard to the design and the installation; hence, the Department was not negligent in these respects." We concur in these findings.
This brings us to a consideration of the evidence as it relates to the contention of the Plaintiff that the Department was negligent in the maintenance and upkeep of the drainage grate and the shoulder of the right of way surrounding it.
Responsibilities of the Department of Highways are established by Legislative Acts.
The Department of Highways was created by Legislative Act (LSA-R.S. 48:11) pursuant to authority contained in Art. 6, Sec. 19.2 of the Louisiana Constitution of 1921, as amended.
The Legislature, by additional legislative acts, established the functions and duties of the Department of Highways. LSA-R.S. 48:21. These functions included the authority and responsibility to construct, improve, maintain, repair, and regulate the state highway system.
LSA-R.S. 48:1(11) defines a "highway" as follows:
"Highway' means a public way for vehicular, mounted, and pedestrian traffic, including the entire area dedicated thereto and the bridges, culverts, structures, appurtenances, and features necessary to or associated with its purpose."
LSA-R.S. 48:1(13) defines "maintenance" as follows:
"Maintenance' is the operation, activity, and continuing process of repairing and *822 preserving an existing highway or any part thereof to keep it at or near its original level or standard of usefulness."
Highway La.-U.S. 90 is, and was, at all pertinent times, a part of the State Highway system. LSA-R.S. 48:191.
From the foregoing it is quite clear that the maintenance of the highway and shoulders thereof, in question here, is, and was, at all pertinent times, the sole responsibility of the Louisiana Department of Highways.
That the "shoulders" are included in this responsibility is reaffirmed in the recent case of Hopkins v. State of Louisiana, ex rel. Department of Highways, La.App., 167 So.2d 441, in which it was held:
"In addition, it has been held that the `shoulders' of a highway are part of the state highway system thereby imposing upon the Department of Highways the duty and obligation of maintaining the shoulders of all roads and highways in the state system. Glover v. Town of Ponchatoula, La.App., 17 So.2d 44. We readily concur in this holding in view of the provisions of LSA-R.S. 48:1(11), LSA-R.S. 48:1(13) and LSA-R.S. 48:21."
The drainage grate unquestionably constituted a part of the highway shoulder and drainage system.
The Department itself recognized these responsibilities, and incorporated them in a Maintenance Manual, which it published and used, copy of which was introduced in evidence.
At Chapter 7, Sec. 7.01, the Manual provides:
"Shoulders of hard surfaced roads require year-round maintenance to safely serve vehicular and pedestrian traffic as well as to provide good drainage of the roadway surface."
The evidence established that the Department conducted an inspection when the project was completed in March of 1964, and that subsequent thereto, up to and including April 26, 1965, it neither inspected nor maintained the area under consideration in this lawsuit. The evidence is conclusive that during this period of timein excess of one yeardirt, mud, rock, shell, and other debris, which apparently included fragments of sugar cane stalks, washed in, around and over the drainage grate, and built up on top of it to such an extent that it was completely covered, and looked like a part of the shoulder of the road.
The testimony of several witnesses, which the Trial Judge accepted as reliable witnesses, established that this condition had existed for a considerable period of time prior to the Plaintiff's accident.
This drainage grate, its top covered by a thin crust of soil, etc., had thus become a trap for any shoe heel, cane or crutch measuring less than 23/8 ths inches in diameter that might be placed upon it.
Allowing such a condition to come into existence, and remain, was in direct violation of a duty of the Department of Highways, particularly as enunciated by Chapter 7, Sec. 7.01 of the Maintenance Manual, cited supra. This particular provision clearly recognizes the obligation of the Department to maintain the shoulders of the road for the safe use of pedestrians as well as vehicular traffic.
Accordingly, the failure of the Highway Department to maintain the drainage grate, which constituted an integral part of the shoulder, and drainage system, constituted negligence.
The responsibility of the Department to regularly inspect and maintain both the public highway and the shoulder has been consistently recognized by the jurisprudence of this State. Hopkins v. State Department of Highways (1st Cir.), cited supra; Hale v. Aetna Casualty and Surety Co., 273 So.2d 860 (La.App.2nd Cir.); Petree v. Crowe et al., 272 So.2d 399 (La.App.2nd *823 Cir); McCullin v. State Department of Highways, 216 So.2d 832 (La.App. 2nd Cir.); Hogg v. State Department of Highways, 80 So.2d 182 (La.App.2nd Cir.); and many others.
Clearly, the Department had an obligation imposed upon it by law, to inspect and maintain the drainage grate, the shoulder of which it was a part, and the area of the right of way surrounding it. The factual evidence established that the Department failed to perform these duties and obligations, and was, therefore, negligent.
In its answer the Department has urged that the sole and proximate cause of the accident sued upon, or, alternatively, the contributing cause of the accident, was the negligence of the Plaintiff, Clarence Willis, in the following respects:
"1. In failing to properly observe his path of progress in order to avoid a foreseeable danger.
2. In failing to properly traverse the course of travel available to him at the alleged place of the accident and/or failing to select a more prudent course of travel.
3. In failing to exercise due care and caution when going upon a potentially dangerous condition for one walking on crutches, when he knew or should have known of the risk."
It has already been established that the existence of the drainage grate was obscured from view, and that it constituted a hazardous conditiona trap, as it were for those who were in the same category with Plaintiff. The evidence was uncontradicted that Plaintiff was unaware of the existence of the grate at this point. In addition to the general duty of the Department to maintain the shoulders of the road safe for pedestrians, the evidence establishes that Plaintiff was crossing the road at a point used daily by many persons, in crossing from a point north to south, to reach the sidewalk, and, conversely, when going in the other direction. This crossing was located directly across the road from the Baldwin Elementary School. It was near a row of private dwellings, and, across on the east side of Rosebud Street there was a place of business. The Post Office and Town Hall were also nearby. Undoubtedly many persons crossed at or near this point, daily, on foot. Exhibits P-2B through P-2F.
This Court finds that the Department knew, or should have known, that many pedestrians would cross the right of way in the area of the grate by virtue of its location in the heart of the Town of Baldwin. It is also reasonable to anticipateand the Department should have anticipatedthat some of the pedestrians would be wearing shoes with heels of a lesser diameter than the openings in the grate, or that some persons would be compelled to walk with the aid of crutches or canes.
The Department urges that the "ordinarily reasonable and prudent man" rule should not apply in this instance. The Department urges that Plaintiff, ambulating on crutches, was burdened with a greater duty of care than the "ordinary reasonable and prudent" man would have been. The Department postulates that rules and laws of society are made for the mass of society and the afflictedlike Plaintiffbeing unlike the masses, must adjust to their affliction, rather than society as a whole adjusting to the afflicted.
The concrete application of this interesting concept, or bit of philosophy, to the facts of the instant case, is not pursued by the Department; neither are we favored with any supporting jurisprudence.
This Court finds, as did the Trial Court, that Plaintiff was crossing the highway and shoulder at a point where he was legally entitled to. He was not taking a "short cut." He had a right to assume that the shoulder was safe to travel on and was only obliged to see that which was obvious. Carter v. State Fire and Casualty *824 Co., 209 So.2d 510 (La.App.2nd Cir.) Bustament v. City of New Orleans, 175 So.2d 404 (La.App.4th Cir.).
This Court also finds that, since Plaintiff was unaware of the existence of the drainage grate, and it was obscured from his view, he was in fact exercising all of the care and attention that was apparently needed for his own safety up to and including the occurrence of the accident.
The Court finds no contributory negligence on the part of the plaintiff.
On the contrary, the Court finds that the sole, proximate cause of the accident and the resulting personal injury and damages to Plaintiff was the negligence of the Department of Highways in failing to maintain the shoulder and drainage grate in a safe condition for pedestrian travel.
There is no evidence of negligence, or liability, on the part of any party other than the Department.
Plaintiff answered the appeal taken by the Department, and prayed for an increase in the amount of the award granted by the District Court from $15,000.00 to $35,000.00.
Mr. Clarence Willis was 46 years of age at the time of the accident. His next birthday was due in two months.
At the time of his accident Mr. Willis was recovering from injuries sustained in a previous accident, which had occurred on December 9, 1964, which injuries consisted primarily of a fractured right tibia and fibula, a fracture dislocation of the right ankle, and severe laceration of a hand. According to the medical evidence he was progressing well and complete recovery was anticipated.
The injuries sustained in the accident that forms the basis of this suit consisted of a new fracture of the right leg, at a point below the knee. Plaintiff was taken to Lafayette Charity Hospital where surgery was performed. A Lottes Nail was inserted, with a bone graft being taken from his left hip. He was hospitalized for approximately three months and thereafter he was treated as an out-patient, with the exception of a four-day period when he was re-admitted for the removal of the nail.
Even though Mr. Willis suffered severe pain, the medical evidence fails to definitely establish any degree of permanent disability as a result of the accident of April 26, 1965. The evidence establishes that his normal activities had been limited, and he had performed only occasional work between the time of the accident and the trial some four years later. The record fails to support Plaintiff's claim for lost income. The Plaintiff suffered severe pain for an extended period of time.
For these injuries the lower court awarded Plaintiff $15,000.00, and in our opinion such an award does not amount to an abuse of the Trial Judge's discretion.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.