SARTAIN, Judge.
The accident giving rise to this litigation occurred at about 7:30 p. m. on April 5,1977 on Louisiana Highway 46 near its intersection with Ricouard Road in St. Bernard Parish. Juan Acosta sustained serious bodily injuries when his automobile was involved in a head-on collision in its own lane *1191 of travel with a vehicle owned and operated by Christian Frey. Frey contends that he lost control of his vehicle when he attempted to reenter the paved portion of the highway after either his right rear or both of his right wheels fell into a rut on the shoulder of the road bed. Acosta named as defendants Frey and the State of Louisiana through the Department of Highways[1] (Department). Allstate Insurance Company intervened to recover sums paid to or on behalf of Acosta under the uninsured motorist and medical pay provisions of its policy on the Acosta vehicle.[2]
The Department and Frey interposed the defense of contributory negligence to Acosta’s claims and filed third party and recon-ventional demands respectively against each other for full indemnification and, alternatively, contribution for any award against either of them in favor of Acosta.
Following trial on the merits the district judge awarded judgment in favor of Acosta and against the Department and Frey, individually, jointly and in solido, in the net amount of $18,010.00[3], together with legal interest and costs. The same defendants were similarly cast in favor of Allstate in the sum of $7,771.00. The third party demand of the Department and the reconven-tional demand of Frey were dismissed. The Department (suspensively) and Frey (devol-utively) entered timely appeals.- We affirm.
The Department contends that the decision of the trial court is in error in that it (1) found the Department negligent, (2) failed to hold that the actions of Frey were the sole cause in fact of the accident, and (3) failed to hold Acosta contributorily negligent. Frey contends that the trial judge erred in concluding that his negligence was a cause in fact of the accident.
We are not favored with either oral or written reasons by the trial judge. However, inherent in his decision is the conclusion that each defendant was negligent and that their respective negligence substantially contributed to the accident. We agree.
Highway 46 at the scene of the accident is constructed of asphalt, 18' wide and bordered by shell and dirt shoulders. At the time of the accident the weather was clear and the roadway was dry. Each car was travelling at a reasonable rate of speed, not over 40 miles per hour, and had its lights on dim. The highway at this point has a slight curve but vision of approaching cars is not impaired.
Acosta testified that he had earlier stopped at a convenience store for cigarettes and was proceeding in an easterly direction when the first thing he noticed was the Frey vehicle bearing down on him. He only had time to brace himself for the impact. He did not observe the Frey vehicle leave the asphalt portion of the highway or its “fishtailing” movement upon its return to the asphalt. He insists that he was in his proper lane of travel at the time and there is no evidence in the record to the contrary.
Frey’s testimony is that he was proceeding in a westerly direction between 35 and 40 miles per hour. He turned his head to the right as he threw a package of cigarettes out of the window of his car. At this moment he thought that his right rear wheel left the pavement. He first applied his brakes and then accelerated his vehicle. As he re-entered the asphalt portion of the highway his car began to “fishtail”. Just as he got his vehicle straightened out, the impact occurred. He had not previously noticed the approach of Acosta. He also conceded that he was aware of the narrow pavement (18 feet) and the dangerous ruts.
*1192 The clear preponderance of the evidence is that the shoulder paralleling the westbound lane of travel was 3 to 5 inches lower than the asphalt. This difference in elevation was also referred to in the testimony as a “rut”. At one spot the “rut” was described as being 5 to 7 inches in depth. One witness stated that even after the shoulder was mechanically graded the “rut” would reappear in a matter of days and that this condition had existed for many years.
Frey relies on the following language in Rue v. State, Dept. of Highways, 372 So.2d 1197, 1199 (La.1979):
“A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely the Highway Department’s duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself travelling on, or partially on, the shoulder.
“We conclude that plaintiff’s conduct if indeed it was substandard is no bar to her recovery of damages occasioned chiefly because the Highway Department negligently failed to maintain a safe highway shoulder. We therefore expressly overrule Hopkins v. Department of Highways, supra [167 So.2d 441 (La.App.)].”
and contends that his inadvertent departure from the paved portion of the highway was not legal cause in fact of the accident. We think his reliance on Rue is misplaced. In explaining Rue, the Supreme Court in Sinitiere v. Lavergne, 391 So.2d 821, 826 (La. 1980) stated:
“In Rue, supra, this court stated that a motorist’s duty to drive reasonably does not extend to the risk of injury from striking an unexpected and unexpectable hazard resulting from a negligently maintained highway shoulder. The reason for this statement was the jurisprudentially recognized rule that a motorist has a right to assume that highway shoulders are maintained in a reasonably safe manner in the absence of knowledge or reason to know of a defect. This language does not establish the highway shoulder as a ‘zone of recovery’ for every straying motorist. Rather, it states the simple principle that the law will not automatically bar a person from recovery or charge him with liability vis-a-vis third parties where the law does not charge that person with actual or constructive knowledge of an avoidable danger. Thus, if a person is chargeable with knowledge of a shoulder defect that could cause serious injury and, nevertheless, disregards his own safety and the safety of others, the law considers his actions in leaving the main travel portion of the roadway to be a breach of his duty to himself and to the others who can reasonably be expected to be injured by his actions. See Rodgers v. Department of Highways, 376 So.2d 1295 (La.App. 2nd Cir. 1979); Morrow v. Department of Highways, 377 So.2d 430 (La.App. 2nd Cir. 1979).”
The facts in Sinitiere are practically identical to those in the case now before us. In Sinitiere as here there was (1) a dangerous condition in the shoulder of the road[4], (2) the offending motorist was not confronted with a perceivable emergency reasonably dictating his departure from the pavement, (3) the motorist knew of the dangerous condition of the shoulder, and (4) the motorist also made a rapid and sudden movement to reenter the main roadway.
The Department offered expert testimony to the effect that the actions of Frey in applying his brakes and then accelerating his vehicle, coupled with his sudden turning to the left, caused him to lose control of his vehicle and that this would have occurred even without the existence of the “rut”. The trial judge rejected this conclusion and we find no error in his doing so.
*1193 Secondly, the Department contends that notwithstanding all of the testimony concerning the dangerous condition of the shoulder, it never received any notice thereof, direct or otherwise. The records of the Department which were offered into evidence reveal that the shoulders of the road in the unit comprising the scene of the accident were reshaped on March 2,1977, at which time some 70 yards of shells were used to grade the area. The Department’s inspector for that unit of the highway had retired by the time of trial and was not available to testify. Conceding that no direct notice was given to the Department by any of the parties living in the vicinity of the accident, the question is whether the Department is deemed to have had constructive notice of the dangerous condition of the shoulder by virtue of the existence of the “rut” over a period of many years. We hold that the Department had such notice. Willis v. State ex rel. La. Dept. of Highways, 321 So.2d 819 (La.App. 1st Cir. 1976); writ denied 325 So.2d 280 (La.1976); and, Jones v. La. Dept. of Highways, 338 So.2d 338 (La.App. 2nd Cir. 1976).
The Department and Frey contend that Acosta was contributorily negligent in not observing the Frey vehicle until the collision was inevitable. They reason that had he observed that which he should have seen he could have slowed his vehicle down and avoided the accident as Frey “was just getting his car under control.” We find no merit in this argument. Even Frey testified that the entire series of events, his dropping off into the “rut”, his return to the pavement, and the “fishtailing” of his vehicle, occurred in a matter of seconds.
The question of quantum was not raised on appeal.
For the above reasons the judgment of the district court is affirmed.

AFFIRMED.

. Now the Department of Transportation and Development.

. Allstate’s separate suit for these sums was consolidated for trial with Acosta’s suit.

.Pain and suffering $ 7,750.00
Residual disability 12,500.00
Loss of wages 2,660.00
$22,910.00
Less uninsured motorist
payment to Acosta by Allstate 4,900.00
$18,010.00

. A drop of some 3V2 to 4 inches from the travel portion of the highway to the abutting shoulder.